FILED
2015 Jun-16  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **BRIAN R. TINSLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:15-CV-123-VEH** |
| | ) |
| **BP CORPORATION NORTH** | ) |
| **AMERICA, INC., BP AMERICA,** | ) |
| **INC., CRAIG CERISE, and** | ) |
| **LYNETTE OTTO,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Plaintiff Brian R. Tinsley ("Mr. Tinsley"), who is proceeding *pro se*, initiated this breach of contract action on January 23, 2015. (Doc. 1). The four defendants named in his lawsuit are BP Corporation North America, Inc. ("BP Corp."), BP America, Inc. ("BP America"), Craig Cerise ("Mr. Cerise"), and Lynette Otto ("Ms. Otto"). (Doc. 15).

The case arises out of Mr. Tinsley's efforts to become a commissioned broker of petroleum products for BP Corp. and/or BP America, which began in February 2013. (Doc. 15 at 4 ¶ 15). Mr. Tinsley filed an amended complaint (Doc. 15) on March 3, 2015, and this pleading includes nine counts:  (i) breach of oral contract; (ii)

breach of implied contract; (iii) conspiracy to breach an oral contract; (iv) conspiracy to breach an implied contract; (v) fraud; (vi) conspiracy to commit fraud; (vii) deceptive business practice; (viii) conspiracy to commit deceptive business practices; and (ix) financial discrimination. (Doc. 15 at 14-21 ¶¶ 45-80).

Pending before the court and challenging the viability of Mr. Tinsley's amended complaint is Defendants' Motion to Dismiss (Doc. 25) (the "Dismissal Motion") filed on March 24, 2015. Defendants also filed their supporting brief (Doc. 26) and evidentiary materials (Doc. 27) on this same date. Because Mr. Tinsley is representing himself, the court, on March 25, 2015, entered a special briefing order (Doc. 30) on the Dismissal Motion.

Also pending before the court is a Motion for Default Judgment, Legal Malpractice, [and] Fraud upon the Court (Doc. 31) (the "Default Motion") filed by Mr. Tinsley on April 13, 2015, as part of his response to Defendants' Dismissal Motion. Mr. Tinsley also filed a supporting memorandum (Doc. 32) on April 13, 2015. On April 27, 2015, Defendants filed their reply (Doc. 34) in support of their Dismissal Motion.

Accordingly, the Dismissal Motion and the Default Motion are now both under submission. For the reasons discussed below, Defendants' Dismissal Motion is **GRANTED IN PART** and otherwise **DENIED**. Further, Mr. Tinsley's Default

Motion is **DENIED**.

## II.    Standards

### A.    Rule 12(b)(2)

In *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990), the Eleventh Circuit described the framework for evaluating personal jurisdiction challenges under Rule 12(b)(2) of the Federal Rules of Civil Procedure when subject matter jurisdiction is premised upon diversity, as Mr. Tinsley relies upon here (Doc. 15 at 2 ¶ 6):[1]

> When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Id*. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id*. Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id*.
>
> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990); *Alexander Proudfoot Co.*, 877 F.2d at 919. First, we consider the jurisdictional question under the state long-arm statute. *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877

---

[1]  Mr. Tinsley mistakenly also suggests that subject matter jurisdiction exists under the federal question statute, *i.e.*, 28 U.S.C. § 1331. (Doc. 15 at 2 ¶ 7). However, because his case asserts only state law claims and does not otherwise present a compelling federal interest for this court to address, no federal question jurisdiction exists and only diversity jurisdiction gains him access to federal court.

> F.2d at 919. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Madara*, 916 F.2d at 1514 (emphasis added) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).

### B.      Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint.

4

*Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

### C.    Rule 55

Rule 55 of the Federal Rules of Civil Procedure governs default judgments and provides in part:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). Further, an entry of a default by the clerk is a prerequisite to obtaining a default judgment against a defendant under Rule 55(b).

### III.   Analysis

### A.    Defendants' Dismissal Motion

### 1.    Defendants' Personal Jurisdiction Challenge

The first part of Defendants' Dismissal Motion seeks a dismissal of Mr. Cerise and Ms. Otto on personal jurisdiction grounds. Mr. Cerise and Ms. Otto have supported this aspect of the Dismissal Motion with affidavits that establish their limited involvement with Mr. Tinsley and, importantly, their lack of contacts with the State of Alabama. (Doc. 27 at 5 ¶¶ 4-8; *id.* at 6 ¶¶ 4-7).[2]

---

[2] Any page references to Doc. 27 correspond with the court's CM/ECF numbering system.

6

As succinctly explained in *LaSalle Bank N.A. v. Mobile Hotel Properties, LLC*,
274 F. Supp. 2d 1293 (S.D. Ala. 2003), Mr. Tinsley is able to meet his burden of
establishing personal jurisdiction over Mr. Cerise and Ms. Otto in Alabama as
follows:

> When a defendant challenges personal jurisdiction, <u>the plaintiff
> has the twin burdens of establishing that personal jurisdiction over the
> defendant comports with (1) the forum state's long-arm provision and
> (2) the requirements of the due-process clause of the Fourteenth
> Amendment to the United States Constitution</u>. *See Olivier v. Merritt
> Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992), *cert. denied*, 507
> U.S. 983, 113 S. Ct. 1577, 123 L. Ed. 2d 145 (1993). Because
> Alabama's long-arm provision, Ala. R. Civ. P. 4.2(a), authorizes the
> assertion of personal jurisdiction to the limits of the United States
> Constitution, <u>a plaintiff may carry both burdens by demonstrating that
> personal jurisdiction over the defendant meets the requirements of
> federal due process</u>. *Id.* Due process requires, first, that the defendant
> have "certain minimum contacts" with the forum state and, second, that
> the exercise of jurisdiction over the defendant does not offend
> "traditional notions of fair play and substantial justice."

*LaSalle*, 274 F. Supp. 2d at 1296 (emphasis added); *see also Morris v. SSE, Inc.*, 843
F.2d 489, 492 n.3 (11th Cir. 1988) ("This case presents no need to examine
Alabama's long-arm jurisdictional statute because that statute authorizes a court to
assert personal jurisdiction to the limits of federal due process.").

Mr. Tinsley's amended complaint generally contends that personal jurisdiction
exists over Defendants. (Doc. 15 at 3 ¶¶ 9-11). However, Mr. Tinsley lumps all the
named defendants together as "BP" (*see* Doc. 15 at 1 ("to be hereafter referred to as

the defendant/s [sic] or BP")) and makes no particularized allegations about why the exercise of personal jurisdiction over Mr. Cerise or Ms. Otto as individual defendants is constitutional. Importantly, Mr. Tinsley has neither made a sufficient threshold showing why this court can exercise personal jurisdiction over either one of them, nor rebutted any of the evidence contained in their affidavits establishing why the exercise of personal jurisdiction over each of them is improper.

A plaintiff can either establish general or specific jurisdiction over the defendant to satisfy the requirement of *in personam* jurisdiction. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (detailing contours of appropriate and inappropriate exercise of personal jurisdiction); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9, 104 S. Ct. 1868, 1872 nn. 8-9, 80 L. Ed. 2d 404 (1984) (acknowledging distinction made between exercise of "specific" and "general" jurisdiction); *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) ("The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general."); *Ex parte Lagrone*, 839 So. 2d 620, 627 (Ala. 2002) ("A nonresident defendant may be subjected to Alabama's general *in personam* jurisdiction if its contacts with this State, <u>although unrelated to the cause of action,</u> are 'continuous and systematic.'")

8

(citing *Helicopteros* and other cases) (emphasis by underlining added).

To establish general jurisdiction over a defendant, a plaintiff must demonstrate that the defendant's connection with the forum state is "continuous and systematic." *LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Sherritt*, 216 F.3d 1286, 1292 (11th Cir. 2000) ("The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." (citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986))).

In contrast, to constitute minimum contacts for the purposes of specific jurisdiction:

> [The Eleventh Circuit] appl[ies] the three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 474-75, 105 S. Ct. 2174, 2182-83, 85 L. Ed. 2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *see also Oldfield*, 558 F.3d at 1220-21; *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630-31 (11th Cir. 1996).

The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1335 (11th Cir. 2013) (footnote omitted); *see LaSalle Bank*, 274 F. Supp. 2d at 1297 (similar); *see also Sherritt*, 216 F.3d at 1291 ("The requirement that there be minimum contacts is grounded in fairness.").

Because of Mr. Cerise's and Ms. Otto's lack of any continuous or systematic contacts with the State of Alabama,[3] the court clearly cannot exercise general jurisdiction over either one of them. As for specific jurisdiction, the court concludes that a handful of telephone calls and even fewer email communications for a limited period of time with a plaintiff who had an interest in becoming a broker, who initiated the discussions about this commercial prospect at a local level first, and who happens to reside in Alabama is simply not sufficient enough to meet the minimum contacts test as framed by the Eleventh Circuit in *Mosseri*.

---

[3] Ms. Otto has "driven through the state of Alabama several times in the past several years while driving from Illinois to Florida." (Doc. 27 at 6 ¶ 4). Mr. Tinsley does not contend, much less cite to any case which holds that such a periodic passing-through presence in Alabama means that Ms. Otto's contacts meet the more demanding general jurisdiction standard. *Cf. Sherritt*, 216 F.3d at 1292 ("Although Appellants strenuously argue that we need only find the minimum contacts required for specific jurisdiction, it is clear to us that the applicable due process requirements are the more restrictive ones of general jurisdiction.") (emphasis added).

Mr. Cerise's specific contacts with Mr. Tinsley include approximately five emails and two telephone conversations occurring over the two-month period of March and April of 2013. (Doc. 27 at 5 ¶ 7). Ms. Otto's interaction with Mr. Tinsley in Alabama is even less–she sent him only one email and never spoke to him on the telephone. (Doc. 27 at 7 ¶ 7).

The court assumes without deciding that Mr. Tinsley can meet the first prong of the minimum contacts standard, *i.e.*, the parties' dispute arises out of or relates to one or more contacts that Defendants made with the forum. However, even with the benefit of this jurisdictional assumption, neither Mr. Cerise's nor Ms. Otto's scarce communications directed toward and/or responding to Mr. Tinsley in Alabama were done so purposefully and with such a level of intentionality that they should reasonably expect to be subject to the court's jurisdiction merely because of Mr. Tinsley's presence here.

As the Eleventh Circuit explained the so-called "traditional" purposeful availment prong in *Mosseri*:[4]

---

[4]  The Eleventh Circuit also described the alternative *Calder* "effects test" as "one that is based on a plaintiff's ties to the forum state and the harm suffered by the plaintiff[,]" but did not analyze its applicability. *Mosseri*, 736 F.3d at 1357. The "effects test" is "unavailable in contract cases" and "does not supplant the traditional minimum contacts test for purposeful availment applicable in contract and tort cases alike." *Id.* In *Calder v. Jones*, 456 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), the Supreme Court created the "effects test" applicable to non-forum tortious conduct resulting in an "allegedly libelous story concern[ing] the California activities of a California resident" such that "California [wa]s the focal point both of the story and of the harm

Under the minimum contacts test for purposeful availment, we assess the nonresident defendant's contacts with the forum state and ask whether those contacts:  (1) are related to the plaintiff's cause of action; (2) involve some act by which <u>the defendant purposefully availed himself of the privileges of doing business within the forum</u>; and (3) are such that <u>the defendant should reasonably anticipate being haled into court in the forum</u>. *See Carrillo*, 115 F.3d at 1542. In performing this analysis, we identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria. *See King & Hatch, Inc. v. S. Pipe & Supply Co.*, 435 F.2d 43, 46 (5th Cir. 1970) ("Taken collectively, the contacts of [the nonresident defendant] with the State of Alabama far exceed those 'minimum contacts' which would allow Alabama to constitutionally compel [the defendant] to defend this suit in the forum state.").

*Mosseri*, 736 F.3d at 1357 (emphasis added).

The overriding attenuated and inchoate nature as well as the low number of contacts attributable to Mr. Cerise and Ms. Otto over a short-lived period of time are insufficient to meet the purposeful availment prong. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State [such that a defendant] 'should reasonably anticipate being haled into court there.'" (quoting *World-Wide Volkswagen Corp. v.*

---

suffered." 456 U.S. at 788, 789, 104 S. Ct. at 1486. Because, unlike the situation in *Calder*, Mr. Tinsley "is [not] the focus of the activities of the defendants out of which the suit arises" and as all his claims are either expressly or implicitly contract-related, the "effects test" does not apply here. *Cf. Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ("A purposeful availment analysis is most often used in suits sounding in contract.")

12

*Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980))); *Burger King*, 471 U.S. at 474, 105 S. Ct. at 2183 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (internal quotations marks omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958))); *Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185 ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."); *see also Future Technology Today, Inc. v. OSF Healthcare*, 218 F.3d 1247, 1251 (11th Cir. 2000) (concluding that "haled into court" prong was not met when "[a]ll contract negotiations took place by telephone; the contract was signed by the defendant in Illinois after at least two visits to that state by the plaintiff; the defendant never came to Florida until after the purported initial breach")); *Aeropower, Ltd. v. Matherly*, 511 F. Supp. 2d 1139, 1156 (M.D. Ala. 2007) ("Considering the quality, nature, and extent of the Aero Records defendants' contacts with Alabama, [including telephone, fax, mail and wire communications,] as well as the association between these contacts and the instant litigation, the court finds that none of said defendants' contacts with Alabama can support a finding of

13

purposeful activity invoking the benefits and protections of Alabama."); *cf. Borg-Warner*, 786 F. 2d at 1063 ("The binding precedent in this circuit indicates that a purchaser in an isolated transaction may not be subject to personal jurisdiction in a seller's state merely because the manufacturer performed its duties under the contract there." (emphasis added) (citing *Owen of Georgia, Inc. v. Blitman*, 462 F.2d 603 (5th Cir. 1972)));[5] *Rhodes v. Unisys Corp.*, 170 F. App'x 681, 684 (11th Cir. 2006) ("It is unlikely that a single contact [in the form of an email unrelated to causes of action which the plaintiff ultimately brought in the lawsuit] with the forum state by Weinbach will be sufficient to create jurisdiction over him by the courts in Alabama.") (citing *Future Technology*).

Thus, in light of the foregoing authorities and Mr. Tinsley's failure to show the existence of general jurisdiction or satisfy his second prong burden applicable to specific jurisdiction, the Dismissal Motion is **GRANTED** as to the personal jurisdiction portion,[6] and Mr. Cerise and Ms. Otto are **HEREBY DISMISSED WITHOUT PREJUDICE** from Mr. Tinsley's lawsuit.

---

[5]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6]  Because Mr. Tinsley has not carried his burden on the purposeful availment prong, the court does not reach consideration of the "fair play and substantial justice" prong which Defendants have the burden to carry. *See Mosseri*, 736 F.3d at 1358 (detailing and analyzing applicable components of prong three to minimum contacts test).

### 2.      Defendants' Rule 12(b)(6) Contentions

### <u>General 12(b)(6) Ruling</u>

The second section of the Dismissal Motion contends that Mr. Tinsley has failed to state a claim against any defendant in a fashion that comports with the pleading requirements of *Twombly* and *Iqbal*–for a claim to survive a Rule 12(b)(6) challenge by a defendant post-*Twombly* and *Iqbal*, the cause of action, as alleged, can no longer just be merely possible or theoretical, but rather it must be <u>plausible</u> under the applicable law and asserted in a good faith factual manner beyond simply an assertion conveying to the court that "I was done wrong." *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (explaining that Rule 8 pleading standard requires more from a plaintiff than merely "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or "naked assertion[s]" without "further factual enhancement" (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966)).

Here, Defendants are correct that neither Mr. Tinsley's pleading nor his opposition to their Dismissal Motion "alleges anything that comes close to satisfying the legal elements of the nine [purported] claims that he makes under Alabama law." (Doc. 34 at 3). However, rather than an outright dismissal of his case with prejudice, the court concludes that, because he is representing himself, the more appropriate

relief in this instance is to give Mr. Tinsley the opportunity to replead <u>only those</u> <u>claims that are plausible under either Alabama or federal law against BP Corp. and</u> <u>BP America</u> as Mr. Cerise and Ms. Otto are no longer defendants in his case, having been dismissed above on jurisdictional grounds.

In repleading, Mr. Tinsley must draft a much more definite and comprehendible pleading. His claims against each defendant must be set forth in separately numbered counts and not asserted against Defendants collectively. Additionally, Mr. Tinsley should refrain from incorporating allegations by reference, endeavor to streamline his claims and allegations, and reduce unnecessary duplication of his contentions. In his replacement pleading, Mr. Tinsley must break down each one of his claims into its requisite elements and connect those elements to those facts which in good faith took place and which plausibly support why that defendant is liable to him under that specific claim. If Mr. Tinsley lacks facts to plausibly support the elements of a claim, then he should omit that claim from his replacement pleading.

The deadline for Mr. Tinsley to replead his amended complaint is **on or before** **July 20, 2015**. <u>**The court cautions Mr. Tinsley that the failure to replead his**</u> <u>**complaint in an acceptable manner that comports with the Federal Rules of Civil**</u> <u>**Procedure as required by this order may result in a dismissal of his entire case**</u> <u>**with prejudice**</u>.

16

## **Count Specific Dismissals**

While the court is giving Mr. Tinsley the opportunity to replead his amended complaint, such repleader shall not include any deceptive trade practices claim as Defendants have demonstrated the untimeliness of that alleged statutory violation. Specifically, § 8-19-14 of Alabama's Deceptive Trade Practices Act ("DTPA") provides in pertinent part:

> No action may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action, but in no event may any action be brought under this chapter more than four years from the date of the transaction giving rise to the cause of action unless the contract or warranty is for more than three years.

Ala. Code § 8-19-14 (emphasis added). Here, Mr. Tinsley objects to Defendants' alleged wrongful conduct that took place in March and/or April of 2013 and, yet, he did not initiate this case until over one year later, on January 23, 2015. (Doc. 1). Additionally, while Mr. Tinsley has attempted to bring a breach of contract claim, nowhere has he alleged anything that would plausibly trigger the DTPA's longer statute of limitations period for contracts lasting more than three years. Consequently, any purported deceptive trade practices violation is unambiguously time-barred by the DTPA's one-year provision and, thus, it is an implausible claim.

Further, in the absence of an underlying timely deceptive trade practices claim,

Mr. Tinsley's asserted conspiracy to commit deceptive business practices is likewise an implausible count and is due to be dismissed with prejudice. *See, e.g., Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000) ("A plaintiff alleging a conspiracy must have a valid underlying cause of action." (citing *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993))); *Callens*, 769 So. 2d at 280 ("[A] conspiracy claim must fail if the underlying act itself would not support an action" (internal quotation marks omitted) (quoting *Triple J Cattle, Inc. v. Chambers*, 621 So.2d 1221, 1225 (Ala. 1993))).

When repleading Mr. Tinsley must also omit his purported claim for financial discrimination because neither Alabama nor federal law recognizes such a cause of action. (*See* Doc. 26 at 26 ([H]is Complaint [does not] provide any law or statute which defines such cause of action.")). Accordingly, the Rule 12(b)(6) portion of the Dismissal Motion is **GRANTED** with respect to Counts Seven, Eight, and Nine, and those claims are **HEREBY DISMISSED WITH PREJUDICE** from Mr. Tinsley's lawsuit.

## B.    Mr. Tinsley's Default Motion

Mr. Tinsley's Default Motion seeks to have this court enter a default judgment against Defendants on his claims. However, to the extent that Mr. Tinsley is seeking such the relief under Rule 55, his request is inappropriate for at least two reasons.

First, Mr. Tinsley has not obtained an entry of default by the clerk under Rule 55(a) and, without that procedural prerequisite, his motion for judgment by default under Rule 55(b) lacks an essential component. Second, by filing their Dismissal Motion, Defendants have responded to and defended against his lawsuit consistent with their obligations under the Federal Rules of Civil Procedure and, as a result, neither an entry of default pursuant to Rule 55(a) nor an entry of default judgment pursuant to Rule 55(b) is appropriate.

Alternatively, to the extent that Mr. Tinsley seeks a judgment by default as some type of sanction against Defendants for their conduct, nothing that they have done in this litigation warrants a sanction, much less one in the extreme form of a default judgment. *See, e.g., United Artists Corp. v. Freeman*, 605 F.2d 854, 856 (5th Cir. 1979) ("A default judgment is clearly 'a <u>drastic remedy</u> and should be resorted to only in <u>extreme situations</u>.'" (emphasis added) (quoting *Charlton L. Davis & Co. P. C. v. Fedder Data Center*, 556 F.2d 308, 309 (5th Cir. 1977))); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986) ("The decision to dismiss a claim, like the decision to enter a default judgment, <u>ought to be a last resort</u>—ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders." (emphasis added) (citing *Coors v. Movement Against Racism*, 777 F.2d 1538, 1542 (11th Cir. 1985))). Accordingly, Mr. Tinsley's

19

Default Motion is **DENIED**.

## IV.    Conclusion

Defendants' Dismissal Motion is **GRANTED IN PART** and otherwise is **DENIED**. Accordingly, Mr. Cerise and Ms. Otto are both **HEREBY DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. Additionally, Counts Seven, Eight, and Nine of Mr. Tinsley's amended complaint are **HEREBY DISMISSED WITH PREJUDICE**. Further, Mr. Tinsley's Default Motion is **DENIED**. Finally, Mr. Tinsley is **ORDERED** to replead his amended complaint in a plausible, good faith manner against BP Corp. and BP America only <u>and</u> omitting any reference to those specific claims that have been dismissed with prejudice by this order, no later than July 20, 2015.

**DONE** and **ORDERED** this the 16th day of June, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge